OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

ANDREW KILBOURN,
Plaintiff,

v.

COUNTY OF LIVINGSTON, ALEXANDER KOTSONAS, in his official and individual capacities, and DEPUTY DOE, in his official and individual capacities,
Defendants
_______________________________/

Case No.: 26-cv-13736
Hon. _________________

**COMPLAINT**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
THOMAS J. LAMBERT (P86348)
Attorneys for Plaintiff
530 West Saginaw St
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com
tlambert@olcplc.com

---

**COMPLAINT**

NOW COMES Plaintiff ANDREW KILBOURN, by counsel, and complains as follows:

1. This civil rights action arises from the seizure, deprivation, and continued unlawful retention, without a warrant and without probable cause, of a lawfully possessed pistol belonging to Plaintiff ANDREW KILBOURN.

2. Plaintiff KILBOURN is licensed to carry a concealed pistol in Michigan. During a traffic stop on August 25, 2026, a Livingston County deputy took his holstered pistol from the passenger seat of his truck, ran its

serial number through a state database, and seized the pistol and its ammunition when the database returned no matching record.

3. Michigan law does not condition the lawful possession of a pistol on "registration," and no Michigan statute makes it a crime to possess a pistol that a state database does not list. The absence of a database record is evidence of nothing.

4. No citation, complaint, or warrant has ever issued concerning the pistol. Defendants have nonetheless retained it since the day it was taken, without issuing a property receipt and without initiating any proceeding in which they would be required to justify its retention or in which Plaintiff KILBOURN could challenge it.

5. The seizure violated the Fourth Amendment, and the continued retention (i.e. deprivation) of the pistol violates the Second and Fourteenth Amendments to the United States Constitution.

## PARTIES

6. Plaintiff ANDREW KILBOURN is a resident of Taylor, Wayne County, Michigan, and is licensed to carry a concealed pistol under M.C.L. § 28.425b.

7. Defendant COUNTY OF LIVINGSTON is a political subdivision formed under the laws of the state of and is also a public body pursuant to M.C.L. § 15.232(h).

8. Defendant ALEXANDER KOTSONAS is a Deputy Sheriff employed by the County of Livingston (through its Sheriff's Department) who conducted the traffic stop described below, seized Plaintiff KILBOURN's pistol and ammunition, and imposed the conditions on their return. He acted under color of state law and within the scope of his employment, and he is sued in his individual and official capacities.

9. Defendant DEPUTY DOE is a supervisory deputy of the County of Livingston (through its Sheriff's Department), believed to hold the rank of sergeant, whom Defendant KOTSONAS consulted before seizing Plaintiff KILBOURN's pistol and who approved that seizure. He acted under color of state law and within the scope of his employment, and he is sued in his individual and official capacities. His identity is presently unknown to Plaintiff KILBOURN and will be substituted upon discovery.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## JURISDICTION

10. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Fourth, Second, and Fourteenth Amendments and 42 U.S.C. § 1983.

11. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a) because those claims concern the same seizure and retention of Plaintiff KILBOURN's property that gives rise to the federal claims and therefore form part of the same case or controversy.

12. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

13. Venue is proper within the Southern Division of the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) because the events giving rise to these claims occurred in Brighton Township, Livingston County, Michigan.

## GENERAL ALLEGATIONS

### The Seizure/Deprivation of Plaintiff KILBOURN's Pistol

14. On August 25, 2026, at approximately 5:20 p.m., Plaintiff KILBOURN was operating a 2006 Chevrolet Silverado on northbound US-23 near Hyne Road in Brighton Township, Livingston County, Michigan.

15. Defendant KOTSONAS initiated a traffic stop of Plaintiff KILBOURN's vehicle.

16. The dash-cam recording is available at http://olcplc.com/s/fqc4I.

17. During the entire stop, Plaintiff KILBOURN was polite, respectful, and courteous; Defendant KOTSONAS was rude, threatening, and insolent.

18. Nevertheless, for purposes of this case only, Plaintiff KILBOURN does not contest the lawfulness of the initial stop.

19. Plaintiff KILBOURN was the sole occupant of the vehicle.

20. A Heckler & Koch VP9 pistol rested in a holster on the front passenger seat, in plain view.

21. Plaintiff KILBOURN advised Defendant KOTSONAS that he was licensed to carry a concealed pistol.

22. Plaintiff KILBOURN remained seated in the driver's seat until ordered out of the vehicle as described below.

23. Without asking permission, Defendant KOTSONAS reached through the open front passenger window and into the passenger compartment of Plaintiff KILBOURN's vehicle and removed the holstered pistol.

24. Plaintiff KILBOURN did not consent to Defendant KOTSONAS entering his vehicle or taking his property.

25. Defendant KOTSONAS acted so quickly that Plaintiff KILBOURN had no meaningful opportunity to object before the pistol was out of the vehicle.

26. At or immediately outside the passenger window, Defendant KOTSONAS removed the pistol from its holster, and then unloaded the pistol, releasing the magazine and cycling the slide to eject the round in the chamber.

27. While doing so, Defendant KOTSONAS directed the muzzle of the loaded pistol at Plaintiff KILBOURN's body and in other directions in which a discharge could have struck a person.

28. Defendant KOTSONAS left the holster in Plaintiff KILBOURN's vehicle.

29. Defendant KOTSONAS carried the pistol and its ammunition to his patrol vehicle.

30. At his patrol vehicle, Defendant KOTSONAS handled and repositioned the pistol in order to locate and read its serial number.

31. On a Heckler & Koch VP9, the serial number is stamped in small characters on a metal insert set into the right side of the polymer frame, forward of the trigger guard. It is not visible to a person holding the pistol in an ordinary firing grip and cannot be read without deliberately rotating the pistol and inspecting it closely.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

32. By that point the pistol was unloaded, the magazine was removed, the chamber was empty, the pistol was in Defendant KOTSONAS's exclusive possession, and Plaintiff KILBOURN was seated in his own vehicle several feet away.

33. Defendant KOTSONAS then queried the serial number through the Law Enforcement Information Network.

34. Defendant KOTSONAS reported that no pistol bearing that serial number appeared in the system.

35. Defendant KOTSONAS remained in his patrol vehicle for approximately twelve minutes before exiting, returning to Plaintiff KILBOURN's vehicle, and advising Plaintiff KILBOURN of the result of the query.

36. Plaintiff KILBOURN told Defendant KOTSONAS that he had purchased the pistol approximately four years earlier from a local firearms store, and that he had mailed the pistol sales record to his police department.

37. Defendant KOTSONAS recorded that statement in his written report.

38. Defendant KOTSONAS ordered Plaintiff KILBOURN out of his vehicle and secured him in the rear seat of a marked patrol vehicle.

39. Having decided to seize and deprive Plaintiff of the pistol, Defendant KOTSONAS contacted his supervising sergeant, Defendant DOE, by telephone or radio, to confirm that decision.

40. Defendant KOTSONAS advised Defendant DOE of the result of the Law Enforcement Information Network query.

41. Upon information and belief, Defendant KOTSONAS also advised Defendant DOE that Plaintiff KILBOURN is licensed to carry a concealed pistol.

42. Defendant DOE approved Defendant KOTSONAS's decision to seize and deprive Plaintiff of the pistol.

43. Plaintiff KILBOURN remained confined in the rear seat of the patrol vehicle throughout that call and for a further period afterward.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

44. Defendant KOTSONAS then removed Plaintiff KILBOURN from the patrol vehicle and told him that he was seizing and depriving him the pistol until Plaintiff KILBOURN could "register" it and provide proof of ownership.

45. Plaintiff KILBOURN explained to Defendant KOTSONAS what Michigan law requires of a licensed carrier and why no state record was necessary to his lawful possession of the pistol.

46. Defendant KOTSONAS responded that he could arrest Plaintiff KILBOURN for a felony punishable by five years' imprisonment.

47. With Defendant DOE's approval, Defendant KOTSONAS seized and deprived Plaintiff of the pistol notwithstanding that explanation.

48. Defendant KOTSONAS issued Plaintiff KILBOURN citations for careless driving and improper plate display.

49. Defendant KOTSONAS issued no citation concerning the pistol or Plaintiff KILBOURN's possession of it, and no complaint or warrant has issued since.

50. Defendant KOTSONAS also seized and deprived Plaintiff KILBOURN of eighteen rounds of ammunition, and later logged the pistol and ammunition into property at the County of Livingston (through its Sheriff's Department).

51. Defendant KOTSONAS gave Plaintiff KILBOURN no property receipt, no inventory, and no written notice stating a lawful basis for the seizure, deprivation, and/or continued retention of his property.

52. Defendant COUNTY OF LIVINGSTON recorded the incident under offense code 99009, "General Non-criminal," and closed the case on August 25, 2026.

53. The property record describes the seized/deprived firearm under the notation "UNREGISTERED FIREARM" and identifies no owner for it.

54. Plaintiff KILBOURN's pistol and ammunition have remained in the custody of the County of Livingston (through its Sheriff's Department) continuously since August 25, 2026.

55. No forfeiture proceeding or other legal process has been initiated concerning the pistol or the ammunition.

56. After the seizure and deprivation, Plaintiff KILBOURN made contact with representatives/agents of County of Livingston (through its Sheriff's Department) to request the return of his pistol and ammunition.

57. Plaintiff KILBOURN spoke with an employee who advised him that he would be required to present proof of "registration" or to provide proof of ownership so that he could then refile "registration" forms.

58. Plaintiff KILBOURN stated that his pistol had been taken without lawful authority and that he should not be required to undertake such a process to recover his own property.

59. In response, the employee advised Plaintiff KILBOURN that he was welcome to come to the government office and file a complaint against the deputy.

60. Plaintiff KILBOURN's request for the return of his property was refused, and neither the pistol nor the ammunition has been returned to him.

61. Plaintiff KILBOURN wishes to recover his pistol and ammunition and to continue lawfully possessing and carrying the pistol.

62. M.C.L. § 28.422a(1) exempts an individual licensed under M.C.L. § 28.425b to carry a concealed pistol from the requirement to obtain a license under M.C.L. § 28.422 to purchase, carry, possess, or transport a pistol.

63. That exemption was in effect when Plaintiff KILBOURN acquired the pistol and remains in effect today.

64. Plaintiff KILBOURN's possession of the pistol was lawful without regard to any record of sale or database entry.

65. When Plaintiff KILBOURN acquired the pistol, M.C.L. § 28.422a(2) required the purchaser to forward one copy of the record of sale to the police department of the city, village, or township in which he resided within ten days following the purchase. That duty was transferred to sellers by 2023 PA 19.

66. The statute expressly authorized the purchaser to return that copy by first-class mail sent within the ten-day period.



OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

67. Plaintiff KILBOURN resides in the City of Taylor, which maintains a police department.

68. Plaintiff KILBOURN mailed the record of sale to the Taylor Police Department and told Defendant KOTSONAS so before the seizure/deprivation.

69. Once a purchaser forwards the record copy, his statutory obligation was complete. M.C.L. § 28.422a(3) then required the receiving police department to forward a copy to the Department of State Police within forty-eight hours and to enter the information into the pistol entry database within ten days.

70. Whether a pistol appears in the pistol entry database therefore depends on the acts of government agencies over which the purchaser has no control.

71. The Legislature recognized as much, granting the purchaser the right to obtain a copy of the database entry in order to verify its accuracy. M.C.L. § 28.422a(3).

72. The absence of a database entry is not evidence that a purchaser failed to submit a record of sale.

73. Plaintiff KILBOURN's lawful possession of the pistol did not depend upon his ownership of it. Michigan law expressly permits a concealed pistol license holder to carry, possess, use, or transport a pistol belonging to another individual whose possession is authorized by law. M.C.L. § 28.432(1)(i).

74. A purchaser who failed to comply with M.C.L. § 28.422a(2) was responsible for a state civil infraction and could be fined not more than $250.00.

75. Noncompliance was not a crime, is not a crime today, and did not render possession of the pistol unlawful.

76. M.C.L. § 28.422a(3) provides that after thirty days from the date of purchase, the purchaser is not required to have the record in his possession while carrying, using, possessing, or transporting the pistol.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

77. Michigan law thus relieved Plaintiff KILBOURN of any obligation to carry or produce proof of a record of sale.

78. Defendant KOTSONAS nonetheless conditioned the return of Plaintiff KILBOURN's property on production of the very documentation the Legislature told him he need not have.

79. Michigan provides no procedure by which the owner of a pistol already in his possession may "register" it. The pistol entry database is populated through records of sale submitted at the time of purchase or acquisition.

80. Defendant KOTSONAS thus conditioned return of Plaintiff KILBOURN's property, in part, on completing a procedure that Michigan law does not provide.

81. A sales record under M.C.L. § 28.422a(2) is completed when an individual "purchases or otherwise acquires a firearm."

82. No purchase or acquisition of the pistol has occurred that would permit the completion of a new sales record.

83. A new sales record for the pistol could be completed only by representing that a purchase or acquisition had occurred when none had.

84. An individual who makes a material false statement on a sales record is guilty of a felony punishable by imprisonment for not more than four years or a fine of not more than $2,500.00, or both. M.C.L. § 28.422a(5).

85. The condition placed on the return of Plaintiff KILBOURN's property thus required him either to complete a procedure Michigan law does not provide or to commit a felony.

86. M.C.L. § 750.232a(1) makes obtaining a pistol in violation of M.C.L. § 28.422 a misdemeanor punishable by not more than ninety days imprisonment and a fine of not more than $100.00.

87. Because Plaintiff KILBOURN was exempt from M.C.L. § 28.422 under M.C.L. § 28.422a(1), that provision did not apply to him.

88. The absence of a database entry for a given serial number is consistent with numerous lawful circumstances, including, but not limited to, possession of a pistol belonging to another individual under M.C.L. §

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

28.432(1)(i), possession by a United States citizen holding a concealed pistol license issued by another state under M.C.L. § 28.432(1)(f), possession of an antique firearm under M.C.L. § 28.432(1)(h), a receiving agency's failure to forward or enter the record, and clerical error.

89. The absence of a database entry is not evidence that a pistol is contraband, stolen, or unlawfully possessed.

90. No Michigan statute makes possession of a pistol that does not appear in the pistol entry database a crime, let alone a felony.

91. The Sixth Circuit has held that if it is appropriate to presume that citizens know the parameters of the criminal laws, it is surely appropriate to expect the same of law enforcement officers, at least with regard to unambiguous statutes. *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015).

92. Michigan courts have long rejected the notion that an "unregistered gun" describes a Michigan offense, holding that such terminology is the invention of law enforcement rather than the legal title of any crime. *People v. Anderson*, 153 N.W.2d 885, 887-888 (Mich. Ct. App. 1967).

93. The conduct of Defendants KOTSONAS and DOE conformed to the policies, practices, and customs of the agency that employs them.

94. Upon information and belief, Defendants KOTSONAS and DOE acted pursuant to a policy or practice of seizing and depriving firearms from individuals lawfully in possession of them whenever a Law Enforcement Information Network query returns no matching record.

95. Upon information and belief, deputies of the agency that employs Defendants KOTSONAS and DOE commonly understand and apply Michigan law as making possession of a pistol unlawful when no corresponding state record exists, notwithstanding that Michigan law provides otherwise.

96. Upon information and belief, other firearms have been seized or deprived on the same basis and retained without the institution of forfeiture proceedings.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

97. Upon information and belief, Defendant DOE approved the seizure and deprivation pursuant to the policies, practices, and customs of the agency that employs him concerning firearms that do not appear in the pistol entry database.

98. The decision to seize/deprived and to retain Plaintiff KILBOURN's property was a deliberate decision made or approved by policymaking officials, and not a random or unauthorized act.

99. In the alternative, Defendants KOTSONAS and DOE were not trained that Michigan law does not make possession of a pistol unlawful merely because the pistol does not appear in the pistol entry database, nor trained regarding the circumstances under which a lawfully possessed firearm may constitutionally be seized, deprived, or retained.

100. Encounters between deputies and lawfully armed citizens are a recurring and predictable feature of patrol work in Michigan, making deputies' understanding of the circumstances under which lawful firearm possession may result in seizure and deprivation necessary to the performance of their duties. The need for such training was obvious.

**Plaintiff KILBOURN's Request for Public Records**

101. On September 9, 2026, Plaintiff KILBOURN, through counsel, submitted a written request under the Michigan Freedom of Information Act to the FOIA Coordinator for Livingston County, which processes requests for records of the County's Sheriff's Department. A true copy of the request is attached as **Exhibit 1**.

102. The request sought the body-worn camera recordings of the traffic stop, the incident report prepared by Defendant KOTSONAS, any property inventory or evidence log for property taken during the stop, and the records created in fulfilling the request, and asked that each be treated as a separate request.

103. The records sought are prepared, owned, used, possessed, and retained in the performance of the public body's official functions, and the COUNTY OF LIVINGSTON is the public body who did respond and is responsible for responding to requests for those records.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

104. On September 15, 2026, a Central Records Specialist of the COUNTY OF LIVINGSTON issued a written response partially denying the request. A true copy of the response is attached as **Exhibit 2**.

105. The response produced a redacted copy of Incident Report No. 26-05087 and two video recordings, and stated that Livingston County law enforcement officers do not have body-worn cameras. A true copy of the redacted report is attached as **Exhibit 3**.

106. The response invoked M.C.L. § 15.243(1)(a), M.C.L. § 15.243(1)(d) together with M.C.L. § 28.214, and M.C.L. § 28.421b, without identifying which exemption was applied to which redaction.

107. The response did not describe the information redacted from the records produced.

108. Defendant COUNTY OF LIVINGSTON redacted the entirety of the portion of Defendant KOTSONAS's narrative captioned "LEIN/SOS," which immediately precedes his statement that he "advised Andrew of my findings."

109. Defendant COUNTY OF LIVINGSTON also redacted the make, model, caliber, color, and serial number of Plaintiff KILBOURN's pistol, and Defendant KOTSONAS's description of the pistol in his narrative.

110. The same report discloses, without redaction, the caliber of the ammunition seized and deprived with the pistol.

111. The response did not address the request for records created in fulfilling the request, and no such records were produced.

**COUNT I**
**FOURTH AMENDMENT VIOLATION**
**UNCONSTITUTIONAL SEIZURE OF PROPERTY**
**42 U.S.C. § 1983**
**(Defendants COUNTY and KOTSONAS & DOE in both capacities)**

112. The prior allegations are realleged herein.

113. The Fourth Amendment protects against unreasonable seizures of property independent of any search or arrest. *Soldal v. Cook County*, 506 U.S. 56 (1992).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

114. The warrantless seizure of personal property as contraband or evidence of a crime ordinarily requires probable cause. *United States v. Place*, 462 U.S. 696 (1983).

115. Defendant KOTSONAS's seizure and deprivation of Plaintiff KILBOURN's pistol and ammunition at the conclusion of the traffic stop was a seizure of Plaintiff KILBOURN's property.

116. Defendant KOTSONAS had no warrant to seize Plaintiff KILBOURN's pistol or ammunition.

117. Defendant KOTSONAS lacked probable cause to believe that Plaintiff KILBOURN's pistol or ammunition was contraband, stolen, or evidence of any offense.

118. The pistol had no incriminating character, let alone one that was immediately apparent. *Horton v. California*, 496 U.S. 128, 136-137 (1990).

119. Any justification for temporarily securing the pistol for officer safety ended when the traffic stop concluded and Plaintiff KILBOURN was released.

120. Plaintiff KILBOURN did not consent to the seizure and deprivation of his pistol or ammunition.

121. Plaintiff KILBOURN's possession of the pistol was lawful under M.C.L. § 28.422a(1).

122. Before seizing and depriving Plaintiff of his property, Defendant KOTSONAS was told, and recorded in his report, that Plaintiff KILBOURN had purchased the pistol from a firearm store four years earlier and had mailed the pistol sales record to his own city's police department.

123. Before seizing and depriving Plaintiff of his property, Defendant KOTSONAS was also told why no state record was necessary to Plaintiff KILBOURN's lawful possession of the pistol.

124. A purchaser's failure to submit a record of sale was, at most, a state civil infraction carrying a maximum fine of $250.00.

125. The absence of a database entry did not establish that Plaintiff KILBOURN had committed that infraction.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

126. Michigan provides no forfeiture remedy for that civil infraction, and the pistol itself would not be evidence of it.

127. The seizure of Plaintiff KILBOURN's pistol and ammunition was therefore unreasonable.

128. The Michigan statutes governing the lawful possession of a pistol by a concealed pistol license holder are unambiguous.

129. No reasonable Michigan law-enforcement officer could have believed that the mere absence of a pistol from the pistol entry database made possession of the pistol a crime or, without more, established probable cause to seize it as contraband or evidence of a crime. *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015).

130. Defendant KOTSONAS is liable in his individual capacity for the unlawful seizure.

131. Defendant DOE is liable in his individual capacity for approving the unlawful seizure.

132. Defendants KOTSONAS and DOE acted with reckless or callous indifference to Plaintiff KILBOURN's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

133. The policies, practices, and customs under which Defendants KOTSONAS and DOE acted were the moving force behind the seizure, for which they are sued in their official capacities. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

134. In the alternative, the seizure was approved by an official with final policymaking authority for the agency that employs Defendants KOTSONAS and DOE.

135. In the alternative, the seizure was caused by a failure to train Defendants KOTSONAS and DOE regarding Michigan's firearms statutes and the circumstances under which lawfully possessed firearms may constitutionally be seized.

136. That failure to train amounted to deliberate indifference to the rights of individuals with whom deputies come into contact. *City of Canton v. Harris*, 489 U.S. 378 (1989).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

137. Defendants KOTSONAS and DOE's conduct was willful and wanton and demonstrated reckless or callous indifference to Plaintiff KILBORN's federally protected rights.

138. As a direct and proximate result, Plaintiff KILBOURN has been deprived of his property and of its use continuously since August 25, 2026.

**COUNT II**
**FOURTEENTH AMENDMENT VIOLATION**
**PROCEDURAL DUE PROCESS**
**42 U.S.C. § 1983**
**(Defendants COUNTY and KOTSONAS & DOE in both capacities)**

139. The prior allegations are realleged herein.

140. A procedural due process claim requires a deprivation by state action of a protected property interest and inadequate state process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023); *Novak v. Federspiel*, 140 F.4th 815, 821 (6th Cir. 2025).

141. Plaintiff KILBOURN has a constitutionally protected property interest in his pistol, its magazine, and its ammunition.

142. Defendants KOTSONAS and DOE deprived Plaintiff KILBOURN of that property, and it has been retained continuously since August 25, 2026.

143. Post-deprivation process may suffice only when the necessity of quick action renders pre-deprivation process impossible or impracticable. *Johnson v. City of Saginaw*, 980 F.3d 497, 508 (6th Cir. 2020).

144. No exigency required the deprivation of Plaintiff KILBOURN's pistol.

145. The pistol was not evidence of any offense, and no person's safety required its retention.

146. The pistol was taken from Plaintiff KILBOURN's possession while he was present and claimed it as his own.

147. The return of Plaintiff KILBOURN's property has been conditioned on his "registering" the pistol and producing proof of ownership.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

148. When Plaintiff KILBOURN requested the return of his property, he was told it would be returned only upon proof of “registration” or ownership.

149. Michigan law requires neither. It provides no procedure by which the owner of a pistol already in his possession may “register” it, and it expressly provides that a purchaser need not have the record of sale in his possession while carrying or transporting a pistol after thirty days from the date of purchase. M.C.L. § 28.422a(3).

150. The "registration" demanded as a condition of return can be produced only by making a material false statement on a sales record, which Michigan law makes a felony. M.C.L. § 28.422a(5).

151. The government may not retain property taken from an individual who stands convicted of no offense and condition its return on the individual’s proof of entitlement. Such an individual “should not be saddled with any proof burden” to recover his property. *Nelson v. Colorado*, 581 U.S. 128, 137 (2017).

152. A procedure that requires the person from whose possession property was taken to initiate a separate proceeding and prove his entitlement to its return is not adequate process. *Id.* at 137-138.

153. The private interest in lawfully possessed property is substantial, the risk of erroneous deprivation under a practice that turns on the absence of a database entry is high, and the government has no legitimate interest in retaining noncontraband property it had no probable cause to seize. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

154. No proceeding has been initiated in which the government would be required to justify the retention of Plaintiff KILBOURN’s property, or in which Plaintiff KILBOURN could challenge it.

155. In the civil-forfeiture context, due process requires a timely forfeiture hearing, although it does not require a separate preliminary retention hearing. *Culley v. Marshall*, 601 U.S. 377, 382-390 (2024).

156. Plaintiff KILBOURN has been afforded no hearing of any kind.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

157. Due process forbids the government from unreasonably delaying the initiation of proceedings to justify its retention of seized property. *United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 562-565 (1983).

158. Whether the delay is unreasonable depends on its length, the reason for it, the owner's assertion of his right to the property, and the prejudice to the owner. *Id.* at 564.

159. Plaintiff KILBOURN has been entirely deprived of the use of his property, including the pistol he is licensed to carry.

160. The matter was classified as non-criminal and closed on the day of the seizure.

161. No investigative purpose has supported the retention of Plaintiff KILBOURN's property at any time since.

162. "The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *United States v. La Fatch*, 565 F.2d 81, 83 (6th Cir. 1977).

163. The deprivation was not a random or unauthorized act, but the product of the policies, practices, and customs under which Defendants KOTSONAS and DOE acted.

164. Because the deprivation resulted from established policy, the availability of a post-deprivation state remedy does not satisfy due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

165. Defendant KOTSONAS is liable in his individual capacity for depriving Plaintiff KILBOURN of his property without due process.

166. Defendant DOE is liable in his individual capacity for approving that deprivation.

167. Defendants KOTSONAS and DOE acted with reckless or callous indifference to Plaintiff KILBOURN's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

168. The policies, practices, and customs under which Defendants KOTSONAS and DOE acted were the moving force behind the deprivation, for which they are sued in their official capacities. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

169. In the alternative, the deprivation was approved by an official with final policymaking authority for the agency that employs Defendants KOTSONAS and DOE.

170. In the alternative, the deprivation was caused by a failure to train and supervise Defendants KOTSONAS and DOE regarding the documentation of seized property and the constitutional limits on retaining lawfully possessed property without process.

171. That failure to train amounted to deliberate indifference to the rights of individuals with whom deputies come into contact. *City of Canton v. Harris*, 489 U.S. 378 (1989).

172. Defendants KOTSONAS and DOE's conduct was willful and wanton and demonstrated reckless or callous indifference to Plaintiff KILBORN's federally protected rights.

173. As a direct and proximate result, Plaintiff KILBOURN has been deprived of his property and of its use continuously since August 25, 2026.

**COUNT III**
**SECOND AMENDMENT VIOLATION**
**SEIZURE AND RETENTION OF LAWFULLY POSSESSED FIREARM**
**42 U.S.C. § 1983**
**(Defendants COUNTY and KOTSONAS & DOE in both capacities)**

174. The prior allegations are realleged herein.

175. The Second Amendment, applicable to the States through the Fourteenth Amendment, protects the right of all Americans to keep and bear arms for self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

176. When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022).

177. The right to keep or bear one's own firearms is conduct that falls within the text of the Second Amendment. *Novak v. Federspiel*, 140 F.4th 815, 823-824 (6th Cir. 2025).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

178. Plaintiff KILBOURN owns the pistol, magazine, and ammunition that Defendants KOTSONAS and DOE seized.

179. Plaintiff KILBOURN is licensed by the State of Michigan to carry a concealed pistol.

180. The seizure and continued retention of Plaintiff KILBOURN's pistol, magazine, and ammunition prevent him from keeping or bearing them.

181. To overcome the presumption that the Constitution protects that conduct, the government bears the burden of showing that its conduct is consistent with this Nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 24; *United States v. Hemani*, 608 U.S. 772, 780 (2026).

182. The more a modern practice diverges from historical laws in its purpose and operation, the less likely it is to survive review. *Hemani*, 608 U.S. at 780-781; *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

183. Even when a regulation of arms-bearing serves a permissible purpose, it may not be compatible with the Second Amendment if it burdens the right to an extent beyond what was done at the founding. *Rahimi*, 602 U.S. at 692.

184. Plaintiff KILBOURN was disarmed solely upon the absence of a database entry, without any showing that his possession was unlawful or that he posed a danger to himself or others.

185. Plaintiff KILBOURN was disarmed without process of any kind, before or after.

186. Because Plaintiff KILBOURN was disarmed upon a single triggering fact and nothing more, the burden of justifying his disarmament is a considerable one. *Hemani*, 608 U.S. at 781.

187. Historical laws that restricted the liberties of individuals thought to present a risk usually provided some form of process before an individual lost any of his liberties, even temporarily. *Id.* at 790

188. A practice that divests an individual of his right to keep and bear arms without any pre-deprivation process departs from that tradition. *Id.* at 790-791.

189. No historical analogue supports seizing or depriving a lawfully possessed firearm from a licensed carrier, and retaining it indefinitely, because the firearm does not appear in a government database, where no charge has been brought, no adjudication has occurred, and no forfeiture proceeding has been initiated.

190. The practice under which Defendants KOTSONAS and DOE acted requires a licensed carrier whose firearm does not appear in a state database to establish his entitlement to it before he may keep it.

191. A rule that shifts the default against licensed carriers, so that they must obtain permission before exercising the right, imposes a new and significant burden on the right to keep and bear arms. *Wolford v. Lopez*, No. 24-1046, slip op. at 13-14 (U.S. June 25, 2026).

192. The policies, practices, and customs under which Defendants KOTSONAS and DOE acted were the moving force behind the violation, for which they are sued in their official capacities. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

193. In the alternative, the violation was approved by an official with final policymaking authority for the agency that employs Defendants KOTSONAS and DOE.

194. In the alternative, the violation was caused by a failure to train Defendants KOTSONAS and DOE regarding Michigan's firearms statutes and the circumstances under which lawfully possessed firearms may constitutionally be seized or retained.

195. That failure to train amounted to deliberate indifference to the rights of individuals with whom deputies come into contact. *City of Canton v. Harris*, 489 U.S. 378 (1989).

196. Plaintiff KILBOURN is entitled to a declaration that the seizure and continued retention of his pistol, magazine, and ammunition violate the Second Amendment, and to an injunction requiring the return of that property.

197. Defendants KOTSONAS and DOE's conduct was willful and wanton and demonstrated reckless or callous indifference to Plaintiff KILBORN's federally protected rights.



OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

198. As a direct and proximate result, Plaintiff KILBOURN has been deprived of his property, and of his ability to keep and bear it, continuously since August 25, 2026.

**COUNT IV**
**VIOLATION OF THE MICHIGAN FREEDOM OF INFORMATION ACT**
**M.C.L. § 15.231 *et seq.***
**(Defendant COUNTY OF LIVINGSTON only)**

199. The prior allegations are realleged herein.

200. Defendant COUNTY OF LIVINGSTON is a public body, and Incident Report No. 26-05087 and its associated property records are public records. M.C.L. § 15.232(h), (i).

201. A public body must disclose all public records not specifically exempt, its exemptions are narrowly construed, and it bears the burden of sustaining any decision to withhold. M.C.L. §§ 15.233(1), 15.240(4); *Herald Co. v. City of Bay City*, 614 N.W.2d 873, 877 (Mich. 2000).

202. A public body bears the burden of sustaining any decision to withhold a public record. M.C.L. § 15.240(4).

203. A written notice denying a request in part must contain "[a]n explanation of the basis under this act or other statute for the determination that the public record, or portion of that public record, is exempt from disclosure." M.C.L. § 15.235(5)(a).

204. The response (**Exhibit 2**) listed three exemptions but did not identify which exemption applied to which redactions.[1]

205. Defendant COUNTY OF LIVINGSTON cannot carry its mandatory legal burden as to any redaction for which it has not stated a basis, including those in the report (Exhibit 3) or the videos (Video 1, http://olcplc.com/s/bo971 or Video 2, http://olcplc.com/s/fqc4l).

206. A written notice denying a request in part must also contain "[a] description of a public record or information on a public record that is

---

[1] Due to the filing requirements of federal law (FRCP 5.2(a)(2)), three redactions on pages 6, 7, and 7 of Exhibit 3 were made by Plaintiff's counsel as to the "year of the individual's birth" because Defendant did not redact that information itself.

separated or deleted under section 14, if a separation or deletion is made." M.C.L. § 15.235(5)(c).

207. The response did not describe any of the information redacted from the records produced.

208. The privacy exemption permits a public body to withhold "[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." M.C.L. § 15.243(1)(a).

209. Plaintiff KILBOURN submitted the request through counsel, and the request identified him by name and date of birth.

210. Much of the information redacted from the records concerns Plaintiff KILBOURN, his vehicle, and his property.

211. The privacy exemption protects individuals from disclosure of their information to others. It gives a public body no basis to withhold an individual's own information from that individual.

212. The statutory exemption permits a public body to withhold only "[r]ecords or information specifically described and exempted from disclosure by statute." M.C.L. § 15.243(1)(d).

213. The redacted "LEIN/SOS" section is part of Defendant KOTSONAS's narrative, prepared by him and maintained in the Sheriff's Department's own records system rather than in the Law Enforcement Information Network.

214. M.C.L. § 28.214 does not specifically describe and exempt from disclosure a deputy's narrative report merely because the report recounts what the deputy concluded from a query.

215. "Firearms records" are limited to "any form, information, or record required for submission to a government agency under sections 2, 2a, 2b, and 5b, or any form, permit, or license issued by a government agency under this act." M.C.L. § 28.421(1)(d).

216. A deputy's incident report and the property records of the agency that seized a firearm are not required for submission to a government agency

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

under M.C.L. §§ 28.422, 28.422a, 28.422b, or 28.425b, and are not forms, permits, or licenses issued under the Firearms Act.

217. Defendant KOTSONAS obtained the description and serial number of Plaintiff KILBOURN's pistol by examining the pistol itself, not from any submission required under the Firearms Act.

218. The County's own property record describes Plaintiff KILBOURN's pistol as an "UNREGISTERED FIREARM," reflecting its position that no record of the pistol was ever submitted under the Firearms Act.

219. On that position, the information redacted from the records was never submitted to any government agency under the Firearms Act and cannot be withheld as a firearms record.

220. A report that a firearm does not appear in the pistol entry database is not itself a firearms record.

221. Defendant COUNTY OF LIVINGSTON has not carried its burden of sustaining its redactions.

222. Plaintiff KILBOURN is entitled to an order compelling disclosure of the wrongfully withheld information, together with attorney fees, costs, and disbursements under M.C.L. § 15.240(6).

## JURY DEMAND

223. A jury is demanded for all triable issues.

## RELIEF REQUESTED

224. WHEREFORE, Plaintiff ANDREW KILBOURN respectfully requests this Court to—

a. enter a preliminary and/or permanent injunction immediately and permanently restoring the pistol, magazine, and ammunition to Plaintiff KILBOURN;

b. declare that Michigan law does not condition the lawful possession of a pistol on the existence of a record in the pistol entry database or any other state database, and that the absence of such a record supplies no probable cause

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

to seize a firearm from an individual lawfully in possession of it;

c. enter an order for an award of damages including (but not limited to) nominal damages;

d. enter an order for an award of punitive damages;

e. enter an order compelling Defendant COUNTY OF LIVINGSTON to disclose the public records wrongfully withheld from Plaintiff KILBOURN, together with punitive damages under M.C.L. § 15.240(7);

f. enter an order for an award of actual reasonable attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988, M.C.L. § 15.240(6), and all other applicable laws, rules, or statutes; and

g. grant any additional relief the Court deems just and proper.

Date: September 30, 2026

RESPECTFULLY SUBMITTED:

Thomas Lambert

OUTSIDE LEGAL COUNSEL PLC
THOMAS J. LAMBERT (P86348)
Attorney for Plaintiff
530 West Saginaw St
Hemlock, MI 48626
(989) 642-0055
tlambert@olcplc.com

Date: September 30, 2026

RESPECTFULLY SUBMITTED:

Philip L Ellison

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
530 West Saginaw St
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com