UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ANDREW KILBOURN**,<br><br>Plaintiff,<br>v.<br><br>**COUNTY OF LIVINGSTON, ALEXANDER KOTSONAS,** in his official and individual capacities, and **DEPUTY DOE**, in his official and individual capacities,<br><br>Defendants. | Case No. 26-cv-13736<br>Hon. Shalina Kumar<br>Mag. Judge Anthony Patti |

**DEFENDANTS COUNTY OF LIVINGSTON AND ALEXANDER KOTSONAS'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**

Defendants **COUNTY OF LIVINGSTON** and **ALEXANDER KOTSONAS**, only, move under Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff Andrew Kilbourn's Complaint [ECF No. 1] in its entirety. In support, Defendants state as follows:

1. Plaintiff alleges that Livingston County Sheriff's Deputy Alexander Kotsonas stopped his truck for a traffic violation, saw a loaded pistol on the passenger seat, ran its serial number through the Law Enforcement Information Network, found no record of it, and held the pistol until Plaintiff could show proof of ownership. [ECF No. 1, PageID.3, 5-6, ¶¶ 15, 20, 33, 44; ECF No. 1-3, PageID. 32] Plaintiff does not contest the lawfulness of the stop. [ECF No. 1, PageID.3, ¶ 18]

2. Plaintiff brings four counts: (I) unreasonable seizure of property under the Fourth Amendment; (II) denial of procedural due process under the Fourteenth Amendment; (III) seizure and retention of lawfully possessed firearm under the Second Amendment; and (IV) violation of the Michigan Freedom of Information Act. Counts I through III are brought against the County, Deputy Kotsonas in his individual and official capacity, and an unidentified "Deputy Doe" in their individual and official capacity. Count IV is brought against the County only. The undersigned does not represent Deputy Doe.

3. Count I fails because the Fourth Amendment does not govern the continued retention of property, *Novak v. Federspiel*, 140 F.4th 815, 824 (6th Cir. 2025), and because no clearly established law told Deputy Kotsonas that holding a pistol he could not verify, at the end of a lawful stop, was unconstitutional.

4. Count II fails because Michigan law gives Plaintiff a prompt judicial hearing to recover his property, at which the government bears the burden, and Plaintiff never asked for one. *Novak*, 140 F.4th at 822; Mich. Comp. Laws § 600.4705.

5. Count III fails against Deputy Kotsonas individually because the Sixth Circuit expressly left open, in 2025, whether holding a firearm pending proof of ownership is consistent with the Nation's historical tradition of firearm regulation. A question left open is not clearly established.

6. The official-capacity claims against Deputy Kotsonas and Deputy Doe duplicate the claims against the County. The claims against the County fail because the Complaint pleads no facts showing a County policy, custom, final policymaker decision, or deliberately indifferent failure to train.

7. Once the federal claims are dismissed, the Court should decline supplemental jurisdiction over the state-law FOIA claim in Count IV. 28 U.S.C. § 1367(c). *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

8. Under E.D. Mich. LR 7.1(a), on October 22, 2026, counsel for Defendants contacted Plaintiff's counsel, Philip L. Ellison, explained the nature of this motion and its legal basis, and requested concurrence in the relief sought. Plaintiff's counsel did not respond. Defendants counsel previously contacted Plaintiff's counsel and inquired if the case would be dismissed upon return of the underlying weapon and was refused.

For these reasons and those in the attached brief, Defendants, County of Livingston and Alexander Kotsonas, ask the Court to dismiss Counts I, II, and III against them with prejudice, dismiss the official-capacity claims against Deputy Doe, and decline supplemental jurisdiction over Count IV and dismiss it without prejudice.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

/s/ Kali M. L. Henderson (P76479)
*Attorneys for Livingston County and Kotsonas, only*
210 E. 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com

Dated: October 22, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ANDREW KILBOURN**,

Plaintiff,

v.

**COUNTY OF LIVINGSTON,**
**ALEXANDER KOTSONAS,** in his official and individual capacities, and
**DEPUTY DOE**, in his official and individual capacities,

Defendants.

Case No. 26-cv-13736
Hon. Shalina Kumar
Mag. Judge Anthony Patti

**BRIEF IN SUPPORT OF DEFENDANTS COUNTY OF LIVINGSTON AND ALEXANDER KOTSONAS'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**

# TABLE OF CONTENTS


Index of Authorities ........ iii

Statement of Issues Presented ........ vii

Controlling or Most Appropriate Authority ........ ix

Introduction ........ 1

Statement of Allegations ........ 2

Standard of Review ........ 4

Argument ........ 5

- I. Count I fails against Deputy Kotsonas. ........ 5
  - A. The Fourth Amendment does not apply to the continued retention of the pistol. ........ 5
  - B. Deputy Kotsonas is entitled to qualified immunity for retaining the pistol at the end of the stop. ........ 6
- II. Count II fails because Michigan provides adequate process that Plaintiff never used. ........ 10
- III. Deputy Kotsonas is entitled to qualified immunity on Count III. ........ 12
- IV. The official-capacity claims against Deputy Kotsonas and Deputy Doe duplicate the claims against the County. ........ 14
- V. Plaintiff fails to state a claim against the County. ........ 14
  - A. There is no underlying violation for Counts I and II. ........ 15
  - B. The Complaint pleads no facts showing a County policy or custom ........ 15
  - C. The Complaint does not identify a final policymaker. ........ 16
  - D. The failure-to-train allegations are conclusory. ........ 17
- VI. The Court should decline supplemental jurisdiction over the Michigan FOIA claim. ........ 18

Conclusion and Relief Requested ........ 19

# INDEX OF AUTHORITIES

## Cases

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) .......... 6, 10, 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Bickerstaff v. Lucarelli*,
830 F.3d 388 (6th Cir. 2016) .......... 15, 16

*Burgess v. Fischer*,
735 F.3d 462 (6th Cir. 2013) .......... 15

*Campbell v. Riahi*,
109 F.4th 854 (6th Cir. 2024) .......... 6

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*,
508 F.3d 327 (6th Cir. 2007) .......... 4

*Connick v. Thompson*,
563 U.S. 51 (2011) .......... 17

*Crawford v. Tilley*,
15 F.4th 752 (6th Cir. 2021). .......... 4

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) .......... 6

*Hardrick v. City of Detroit*,
876 F.3d 238 (6th Cir. 2017) .......... 14

*Heien v. North Carolina*,
574 U.S. 54 (2014) .......... 9

*Johnson v. City of Saginaw*,
980 F.3d 497 (6th Cir. 2020) ....................10

*Kentucky v. Graham*,
473 U.S. 159 (1985)....................14

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)....................14

*Mosier v. Evans*,
90 F.4th 541 (6th Cir. 2024) ....................4

*Mullenix v. Luna*,
577 U.S. 7 (2015)....................6

*Musson Theatrical, Inc. v. Fed. Express Corp.*,
89 F.3d 1244 (6th Cir. 1996) ....................18

*Nelson v. Colorado*,
581 U.S. 128 (2017)....................11

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022)....................13

*Northrup v. City of Toledo Police Dept.*,
785 F.3d 1128 (6th Cir. 2015) ....................7, 8

*Novak v. Federspiel*,
140 F.4th 815 (6th Cir. 2025) .................... passim

*Pearson v. Callahan*,
555 U.S. 223 (2009)....................6

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)....................16

*Reed v. Goertz*,
598 U.S. 230 (2023)....................10

*Robertson v. Lucas*,
753 F.3d 606 (6th Cir. 2014) ....................15

*Soldal v. Cook County, Ill*,
506 U.S. 56 (1992) .......... 5

*Thomas v. City of Chattanooga*,
398 F.3d 426 (6th Cir. 2005) .......... 15

*United States v. Hemani*,
608 U.S. 772 (2026) .......... 13

*United States v. Isham*,
501 F.2d 989 (6th Cir. 1974) .......... 7

*United States v. Jacobsen*,
466 U.S. 109 (1984) .......... 5, 7

*United States v. Rahimi*,
602 U.S. 680 (2024) .......... 13

*White v. Pauly*,
580 U.S. 73 (2017) .......... 8

*Wolford v. Lopez*,
609 U.S. 185 (2026) .......... 13

**Statutes**

28 U.S.C. § 1367(c)(1) .......... 18

28 U.S.C. § 1367(c)(3) .......... 18

Mich. Comp. Laws § 15.240(1)(b) .......... 18

Mich. Comp. Laws § 28.421b .......... 18

Mich. Comp. Laws § 600.2920 .......... 11

Mich. Comp. Laws § 600.4705(1) .......... 11

Mich. Comp. Laws § 600.4705(3) .......... 11

Mich. Comp. Laws § 28.214 .......... 18

Mich. Comp. Laws 28.422a(2) ....................................................................9

Mich. Comp. Laws 28.422a(3) ....................................................................9

**Rules**

Mich. Ct. R. 3.105(A)(1) ........................................................................11

## STATEMENT OF ISSUES PRESENTED

1. Does the Fourth Amendment claim in Count I fail because the Fourth Amendment does not apply to the continued retention of property, and because Deputy Kotsonas is entitled to qualified immunity for holding the pistol at the end of a lawful traffic stop?

   Defendants answer: Yes.
   Plaintiff would answer: No.

2. Does the procedural due process claim in Count II fail because Michigan law provides an adequate and prompt judicial remedy that Plaintiff never invoked?

   Defendants answer: Yes.
   Plaintiff would answer: No.

3. Is Deputy Kotsonas entitled to qualified immunity on the Second Amendment claim in Count III because no Supreme Court or Sixth Circuit decision clearly established that holding a firearm pending proof of ownership violates the Second Amendment?

   Defendants answer: Yes.
   Plaintiff would answer: No.

4. Should the official-capacity claims against Deputy Kotsonas and Deputy Doe be dismissed as duplicative of the claims against the County?

   Defendants answer: Yes.
   Plaintiff would answer: No.

5. Do the claims against the County fail because the Complaint pleads no facts supporting municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)?

   Defendants answer: Yes.
   Plaintiff would answer: No.

6. Should the Court decline supplemental jurisdiction over the Michigan FOIA claim in Count IV?

   Defendants answer: Yes.

Plaintiff would answer: No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Novak v. Federspiel*, 140 F.4th 815 (6th Cir. 2025)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)

*District of Columbia v. Wesby*, 583 U.S. 48 (2018)

*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021)

*Connick v. Thompson*, 563 U.S. 51 (2011)

*Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016)

*Kentucky v. Graham*, 473 U.S. 159 (1985)

Mich. Comp. Laws § 600.4705

28 U.S.C. § 1367(c)

## INTRODUCTION

This case is about a single pistol. Plaintiff concedes that Deputy Kotsonas lawfully stopped his truck. [ECF No. 1, PageID.3, ¶ 18] During this stop, Deputy Kotsonas saw a pistol on Plaintiff's passenger seat in plain view. [ECF No. 1, PageID.3, ¶ 20.] He ran the pistol's serial number through the state database, which returned no record. [ECF No. 1, PageID.3, ¶ 18] Deputy Kotsonas informed Plaintiff he was confiscating the pistol until Plaintiff could provide proof of ownership. [ECF No. 1-3, PageID.32] Plaintiff brings this lawsuit approximately 36 days later.

The Sixth Circuit addressed nearly identical claims last year in *Novak v. Federspiel*, 140 F.4th 815 (6th Cir. 2025), a case brought by Plaintiff's counsel against a Michigan sheriff who would not release firearms until the claimants proved they owned them. *Id.* at 818. *Novak* holds that the Fourth Amendment does not apply to retaining property. *Id.* at 824. It holds that Michigan provides adequate process to recover seized property, and that a plaintiff who does not use that process cannot claim he was denied it. *Id.* at 822. It also left open the very Second Amendment question Plaintiff asks this Court to treat as settled. *Id.* at 824.

The claims against the County fare no better. They rest on "information and belief" boilerplate about unnamed policies and untrained deputies, without a single fact about any other incident. [ECF No. 1, PageID.10-11, ¶ 93-100.] The remaining claim, under Michigan's Freedom of Information Act, belongs in state court.

## Statement of Allegations

On August 25, 2026, Deputy Kotsonas stopped Plaintiff's pickup truck on northbound US-23 in Brighton Township. [ECF No. 1, PageID.3, ¶¶ 14-15] The incident report attached to the Complaint states that the truck had no readable license plate and matched a report of a driver passing traffic on the shoulder, which Plaintiff admitted doing. [ECF No. 1-3, PageID.32] Plaintiff does not contest the lawfulness of the stop. [ECF No. 1, PageID.3, ¶ 18]

A loaded Heckler & Koch VP9 pistol sat in a holster on the front passenger seat of Plaintiff's truck, in plain view. [ECF No. 1, PageID.3, ¶ 20] Plaintiff told the deputy that he held a concealed pistol license. [ECF No. 1, PageID.4, ¶ 21] Deputy Kotsonas reached through the open passenger window, removed the pistol from the vehicle, and unloaded it. [ECF No. 1, PageID.4, ¶¶ 23, 26] He took the pistol to his patrol car, located the serial number, and ran it through the Law Enforcement Information Network. [ECF No. 1, PageID.4-5, ¶¶ 29-30, 33] No pistol with that serial number appeared in the system. [ECF No. 1, PageID.5, ¶ 34]

Plaintiff told Deputy Kotsonas that he bought the pistol about four years earlier from a local firearms store and had mailed the sales record to the Taylor Police Department. [ECF No. 1, PageID.5, ¶ 36; ECF No. 1, PageID.32] Deputy Kotsonas recorded that statement in his report. [ECF No. 1, PageID.5, ¶ 37] He then contacted his supervising sergeant who approved retaining the pistol. [ECF No. 1,

PageID.5, ¶¶ 39-42] Deputy Kotsonas told Plaintiff that he was confiscating the pistol until Plaintiff could register it and provide proof of ownership. [ECF No. 1-3, PageID.32] He issued citations for careless driving and improper plate display then released Plaintiff. [ECF No. 1-3, PageID.32] The pistol and 18 rounds of ammunition were logged into the Sheriff's Office property room. [ECF No. 1-3, PageID.32]

After the stop, Plaintiff contacted the Sheriff's Office to ask for the pistol back. [ECF No. 1, PageID.7, ¶ 56] An employee told him he would need to show proof of registration or proof of ownership. [ECF No. 1, PageID.7, ¶ 57] Plaintiff does not allege that he provided any proof of ownership, filed any motion for return of the pistol in a Michigan court, or brought any state-court action to recover it. He filed this lawsuit on September 30, 2026. [ECF No. 1.]

The Complaint alleges, "[u]pon information and belief," that the deputies acted under a policy of seizing firearms whenever a database query returns no record, and that "other firearms have been seized" on the same basis. [ECF No. 1, PageID.10, ¶¶ 94-96] It alleges, in the alternative, that the deputies were not trained on Michigan's firearms statutes, but does not describe the training that was given or what was inadequate about it. [ECF No. 1, PageID.11, ¶ 99] The complaint identifies no other incident, no other firearm owner, and no written policy. [ECF No. 1] Count IV separately alleges that the County's response to a FOIA request from September

9, 2026, redacted parts of the incident report without adequate explanation. [ECF No. 1, PageID.21-23, ¶¶ 199-222; ECF No. 1-1, PageID.27]

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may consider exhibits attached to the complaint. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

The Sixth Circuit has made clear that pleading rules do "not justify a special rule or presumption against granting motions to dismiss that applies specifically for qualified immunity." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021). Once a defendant raises qualified immunity, "plaintiff has the burden of showing that the defendant is not entitled to qualified immunity." *Novak v. Federspiel*, 140 F.4th 815, 820 (6th Cir. 2025) (quoting *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024)).

## ARGUMENT

### I. COUNT I FAILS AGAINST DEPUTY KOTSONAS.

#### A. The Fourth Amendment does not apply to the continued retention of the pistol.

Much of Count I alleges that Plaintiff "has been deprived of his property and of its use continuously since August 25, 2026." [ECF No. 1, PageID.15, ¶ 138] That theory fails as a matter of law. A seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Once that act of taking is complete, the seizure is over. *Novak v. Federspiel*, 140 F.4th 815, 824 (6th Cir. 2025).

The Sixth Circuit applied that rule to firearms in *Novak*. The claimants there argued that a sheriff's refusal to return their firearms violated the Fourth Amendment. The court held the Fourth Amendment does not apply following the conclusion of the seizure. *Novak*, 140 F.4th at 824. "Because the Fourth Amendment does not apply to retaining property," the claim failed "as a matter of law." *Id.* The same is true here. Count I can only reach the moment the pistol was taken, not the time between the stop to date.

### B. Deputy Kotsonas is entitled to qualified immunity for retaining the pistol at the end of the stop.

Qualified immunity protects an officer unless "(1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (internal quotation marks omitted). Courts may decide the second question first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted). Unless the case is obvious, "the plaintiff must point to pre-existing Supreme Court or Sixth Circuit precedent that would have put a reasonable officer on notice that her specific conduct was unlawful." *Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Courts may not define clearly established law "at a high level of generality." *Id.* at 742.

The question here is narrow. Plaintiff does not challenge the stop. [ECF No. 1, PageID.3, ¶ 18] He does not dispute that the loaded pistol was in plain view on the seat beside him. [ECF No. 1, PageID.3, ¶ 20] He concedes that the deputy could secure it for safety while the stop was underway. [ECF No. 1, PageID.13, ¶ 119] That concession is well founded. The Sixth Circuit has long approved an officer's

temporary seizure of a weapon that is not obvious contraband when officer safety requires it. *United States v. Bishop*, 338 F.3d 623, 626–27 (6th Cir. 2003); *United States v. Isham*, 501 F.2d 989, 991 (6th Cir. 1974) ("When the officers learned that there was a gun in the car, they had reasonable grounds to seize it for their own self-protection within the Terry rationale.").

So the only question is this: having lawfully taken a loaded pistol during a valid stop, and having learned that the pistol did not appear in the state's database, could the deputy hold it until the driver showed it was his? No Supreme Court or Sixth Circuit decision says no. The closest Sixth Circuit decision points the other way. In *Novak*, a sheriff refused to release firearms to claimants who could not document their ownership. 140 F.4th at 818. The Sixth Circuit held that the sheriff's continued retention did not violate the Fourth Amendment. *Novak*, 140 F.4th at 822, 824. A reasonable officer reading *Novak* would conclude that holding a firearm until ownership is shown is permitted, not that it is clearly unconstitutional.

Plaintiff relies on *Northrup v. City of Toledo Police Dept.*, 785 F.3d 1128 (6th Cir. 2015), for the idea that "No reasonable Michigan law-enforcement officer could have believed that the mere absence of a pistol from the pistol entry database made possession of the pistol a crime…"[ECF No. 1, PageID.10, 14, ¶¶ 91, 129] *Northrup* speaks only to a specific Ohio law that permitted specific conduct. It involved an officer who stopped and frisked a pedestrian for openly carrying a holstered handgun

on a public sidewalk, conduct Ohio law expressly allowed, with no other reason to suspect him of anything. 785 F.3d at 1129–32. It recognized that if the officer suspected the firearm was an illegal one, the analysis would have been different. *Id.* at 1132.

*Northrup* further recognized the difference between the initial seizure and continued detention in is discussion of the Third Circuit's *Ubiles* case. *Id.* at 1132-33. The Court discussed how *Ubiles* reasoned suspicion of unlicensed carry alone was not enough to allow officers to stop someone and seizure their firearm. *Id.* at 1133. But *Northrup* then says nothing about what an officer may do with a weapon he has already lawfully taken during a conceded, valid traffic stop. That difference matters, because "clearly established law must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (internal quotation marks omitted).

Plaintiff's remaining theory is that Michigan law did not require his pistol to appear in the database, so the deputy should have known the empty search meant nothing. [ECF No. 1, PageID.8-10, ¶¶ 69-90] But that he is wrong and Plaintiff's own allegations show that Michigan's record-of-sale scheme is not simple. The purchaser's duty to submit the record was moved to sellers by 2023 legislation; Plaintiff here alleges he did himself under a prior version, but this is an immaterial distinction for purposes of what Deputy Kotsonas faced. [ECF No. 1, PageID.7, ¶

65] But the law still requires the purchase be submitted and registered. Mich. Comp. Laws 28.422a(2) (requiring sellers to submit through a process wherein State Police entered purchase into a database). Whether a pistol actually appears in the database depends on several government agencies doing their part, perhaps a poor choice by legislators, but a choice nonetheless. [ECF No. 1 PageID.8, ¶¶ 69-70]

The law then requires a purchaser to present proof of the purchase for 30 days after purchase. Mich. Comp. Laws 28.422a(3). After that, the purchased does not have carry such proof while "carrying, using, possessing, or transporting" their weapon. *Id.* The statute does not cover the gap that exists here: when the gun does not end up in the database and it exceeds 30 days.

Plaintiff lists a variety of statutory exceptions that might explain a missing record. [ECF No. 1, PageID.9-10, ¶ 88] The Fourth Amendment does not require officers to resolve every such question perfectly on the roadside. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials . . .". *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014). Plaintiff's legal conclusion that "[n]o reasonable Michigan law-enforcement officer" could have acted as Deputy Kotsonas did is not a fact the Court must accept. [ECF No. 1, PageID.14, ¶ 129] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's suggestions requires an officer, who knows a gun must be in the database,

to believe every person who reports the purchase is more than 30 days old, even in the face of evidence that it was not, i.e., the missing database record.

Plaintiff cannot point to any controlling decision that put the answer to this question "beyond debate." *al-Kidd*, 563 U.S. at 741. Therefore, Deputy Kotsonas is entitled to qualified immunity on Count I.

## II. COUNT II FAILS BECAUSE MICHIGAN PROVIDES ADEQUATE PROCESS THAT PLAINTIFF NEVER USED.

"A procedural-due-process claim requires proof of the following two elements: '(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process.'" *Novak*, 140 F.4th at 821 (quoting *Reed v. Goertz*, 598 U.S. 230, 236 (2023)). Count II fails on the second element.

First, no hearing was required before the pistol was taken. "When the 'necessity of quick action renders pre-deprivation process impossible or impracticable,' post-deprivation process may suffice." *Novak*, 140 F.4th at 821 (quoting *Johnson v. City of Saginaw*, 980 F.3d 497, 508 (6th Cir. 2020)) (internal quotation marks omitted). Deputy Kotsonas had to decide what to do with a loaded pistol on the shoulder of a highway, at the end of a traffic stop, after the database returned no record. A hearing on the side of US-23 was not possible.

Second, Michigan provides a prompt judicial remedy afterward. A person may "move the court having jurisdiction to return the property" on the ground that it "was illegally seized" or "is not subject to forfeiture." Mich. Comp. Laws §

600.4705(1). “The court shall hear the motion within 28 days after the motion is filed.” Mich. Comp. Laws § 600.4705(1). At that hearing, the prosecuting attorney or the local government's attorney must prove that the property was properly seized. Mich. Comp. Laws § 600.4705(2). If the government fails to carry that burden, “the court shall order the return of the property.” Mich. Comp. Laws § 600.4705(3). Michigan also allows a claim-and-delivery action to recover property that has been "unlawfully taken or unlawfully detained." Mich. Ct. R. 3.105(A)(1); Mich. Comp. Laws § 600.2920. The Sixth Circuit recognized both remedies in *Novak*. 140 F.4th at 822, 825.

Plaintiff never used either one. He alleges that he contacted the Sheriff's Office, disagreed with what an employee told him, and then filed this federal lawsuit. [ECF No. 1, PageID.7, ¶¶ 56-58] That is exactly what the *Novak* claimants did, and the Sixth Circuit rejected their claim. 140 F.4th at 822. They "never pursued the expedited hearing available under Michigan's forfeiture statute," and instead sued in federal court. *Novak*, 140 F.4th at 822. As the court put it, "[t]hey cannot now claim that [the sheriff] deprived them of a process that they could have pursued on their own." *Id.* The same is true of Plaintiff.

Plaintiff's legal theories do not change this result. He says the government cannot make him prove his entitlement to his own property, citing *Nelson v. Colorado*, 581 U.S. 128 (2017). [ECF No. 1, PageID.16, ¶¶ 151-152] But under §

600.4705(2), it is the government, not the owner, that bears the burden of proving the seizure was proper. He says no forfeiture proceeding has been started. [ECF No. 1, PageID.16, ¶¶ 154-155] But *Novak* explains that when a sheriff "has not sought formal forfeiture" and has instead "held them for the owner to claim them," the forfeiture statute's notice requirements "do not apply." 140 F.4th at 822. Plaintiff further alleges the deprivation followed an established policy rather than a random act. [ECF No. 1, PageID.17, ¶¶ 163-164] However, in *Novak,* the sheriff's refusal to release firearms without proof of ownership was similarly a deliberate decision, and the Sixth Circuit still found the available state process adequate. 140 F.4th at 822.

Finally, even if Plaintiff could state a due process claim, Deputy Kotsonas would be entitled to qualified immunity. The Sixth Circuit found no due process violation on materially similar facts in *Novak*. No reasonable officer could have understood from that decision that holding a pistol pending proof of ownership violated clearly established due process rights.

## III. DEPUTY KOTSONAS IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT III.

Count III alleges that holding the pistol violates the Second Amendment. [ECF No. 1, PageID.18-21, ¶¶ 174-198] Plaintiff relies heavily on *Novak*. [ECF No. 1, PageID.18, ¶ 177] But *Novak* is the reason this claim fails against Deputy Kotsonas individually.

In *Novak*, the Sixth Circuit held that the right to “keep or bear one's own firearms” falls within the Second Amendment's text. 140 F.4th at 824. It then identified two questions it did not answer: “whether [the] plaintiffs in fact owned [the] guns,” and “whether [the sheriff's] possession of them has been ‘consistent with the Nation's historical tradition of firearm regulation.’” *Id.* (quoting *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022)). The court sent those questions back to the district court. *Novak*, 140 F.4th at 824. The claimants had also waived their individual-capacity Second Amendment claims, so the court never addressed qualified immunity. *Id.* at 824 n.3.

As of August 2026, the Sixth Circuit had expressly left open whether holding a firearm until the owner proves ownership is consistent with historical tradition. A question the court of appeals left open cannot be "beyond debate." *al-Kidd*, 563 U.S. at 741. The Supreme Court decisions Plaintiff cites do not fill that gap. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022), *United States v. Rahimi*, 602 U.S. 680 (2024), *United States v. Hemani*, 608 U.S. 772 (2026), and *Wolford v. Lopez*, 609 U.S. 185 (2026), each addressed a statute or regulation restricting who may possess firearms or where they may be carried. [ECF No. 1, PageID.18-20, ¶¶ 176, 181-183, 186, 191] None involved an officer's handling of a single firearm during a traffic stop. Broad statements about the Second Amendment framework define the right "at a high level of generality," which is exactly what qualified

immunity forbids. *al-Kidd*, 563 U.S. at 742. Therefore, Deputy Kotsonas is entitled to qualified immunity on Count III.

## IV. THE OFFICIAL-CAPACITY CLAIMS AGAINST DEPUTY KOTSONAS AND DEPUTY DOE DUPLICATE THE CLAIMS AGAINST THE COUNTY.

Plaintiff sues both deputies in their official capacities. [ECF No. 1, PageID.2, ¶¶ 8-9] "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The County is already a defendant. The official-capacity claims against Deputy Kotsonas and Deputy Doe add nothing and should be dismissed. Because those claims are claims against the County, the County moves for their dismissal as to Deputy Doe as well.

## V. PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE COUNTY.

A local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* A plaintiff must "show both a constitutional violation and a municipal policy that directly caused the violation." *Novak*, 140 F.4th at 820 (quoting *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017)).

### A. There is no underlying violation for Counts I and II.

For the reasons in Parts I and II above, the continued retention of the pistol does not implicate the Fourth Amendment, and Plaintiff received all the process he was due. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). The County is entitled to dismissal of Count II and of Count I to the extent it rests on retention.

### B. The Complaint pleads no facts showing a County policy or custom.

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 401–02 (6th Cir. 2016) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). A plaintiff can do this by showing an "illegal official policy or legislative enactment," ratification of illegal actions by an official with final decision-making authority, a policy of inadequate training or supervision, or "a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478. A policy or custom "cannot be established solely by a single instance of an employee's alleged misconduct." *Bickerstaff*, 830 F.3d at 402 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005)).

The Complaint describes one stop and one pistol. Its policy allegations are made "[u]pon information and belief" and simply restate the elements of a *Monell*

claim. [ECF No. 1, PageID.10-11, ¶¶ 93-98.] It alleges that "other firearms have been seized or deprived on the same basis," but it does not identify a single one: no owner, no date, no firearm, no deputy. [ECF No. 1, PageID.10, ¶ 96] The Sixth Circuit rejected allegations like these in *Bickerstaff*. There, the plaintiff's "speculative allegations" fell short because, "[b]eyond the blanket assertions" that the city condoned misconduct, that plaintiff pointed "to no facts that would indicate the existence of such an official policy or custom." *Bickerstaff*, 830 F.3d at 402. The same is true here.

**C. The Complaint does not identify a final policymaker.**

Plaintiff alleges, in the alternative, that the seizure was "approved by an official with final policymaking authority." [ECF No. 1, PageID.14, 18, 20 ¶¶ 134, 169, 193] The only official the Complaint says approved anything is Deputy Doe, a supervisory deputy "believed to hold the rank of sergeant" whom Deputy Kotsonas called from the roadside. [ECF No. 1, PageID.2, 5, ¶¶ 9, 39] Municipal liability attaches "only where" a deliberate choice is made "by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion). A road sergeant's approval of a decision at a single traffic stop is not County policy, and the Complaint pleads no facts suggesting that a sergeant sets firearm policy for the Sheriff's Office. The same is true of the unnamed records

employee who told Plaintiff what he would need to provide in order to recover the pistol. [ECF No. 1, PageID.7, ¶ 57]

**D. The failure-to-train allegations are conclusory.**

“A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.” *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The failure must amount to “deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.” *Id.* (internal quotation marks omitted). “A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference.” *Id.* at 62. (internal quotation marks omitted). Only “in a narrow range of circumstances” might a single incident suffice. *Id.* at 63. (internal quotation marks omitted).

The Complaint alleges no pattern. It alleges that the two deputies “were not trained” on Michigan's firearms statutes and that the need for training "was obvious." [ECF No. 1, PageID.11, 14, 18, 20, ¶¶ 99-100, 135, 170, 194] Those are labels, not facts. The Complaint says nothing about what training the County provides, how it was deficient, or any prior incident that put the County on notice. And this is not the rare single-incident case. *Connick* described that narrow exception with the example of a city that arms its officers and sends them out to capture fleeing felons without training them on the constitutional limits on deadly force. 563 U.S. at 63–64. Whether a pistol must appear in a state database is a far cry from that. The failure-

to-train theory fails, and all claims against the County under Counts I, II, and III should be dismissed.

## VI. The Court should decline supplemental jurisdiction over the Michigan FOIA claim.

Count IV is a state-law claim against the County about redactions in its response to a records request made through counsel about two weeks after the stop. [ECF No. 1, PageID.21-23, ¶¶ 199-222] The Court has discretion to decline supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). “When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . .”. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

That is especially true here. Count IV turns on how Michigan's FOIA exemptions apply to firearms records and LEIN information under Mich. Comp. Laws §§ 28.214 and 28.421b. [ECF No. 1, PageID.12, 22, ¶¶ 106, 212-220] Those are questions of state law best decided by Michigan courts. *See* 28 U.S.C. § 1367(c)(1). The Michigan Legislature also provided that a person challenging a FOIA denial may "[c]ommence a civil action in the circuit court." Mich. Comp. Laws § 15.240(1)(b). Therefore, this Court should decline jurisdiction over Count IV and dismiss it without prejudice.

## CONCLUSION AND RELIEF REQUESTED

Defendants County of Livingston and Alexander Kotsonas ask the Court to grant this motion; dismiss Counts I, II, and III against Deputy Kotsonas in his individual and official capacities, against the County, and against Deputy Doe in his official capacity, with prejudice; decline supplemental jurisdiction over Count IV and dismiss it without prejudice; and grant any other relief the Court finds appropriate.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

/s/ Kali M. L. Henderson (P76479)
*Attorneys for Livingston County and Kotsonas, only*
210 E. 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com

Dated: October 22, 2026

### CERTIFICATE OF SERVICE

I hereby certify that on **Thursday, October 22, 2026,** I electronically filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will send notice to all parties and attorneys of record.

/s/Lillian Gaydos
**SEWARD HENDERSON PLLC**